UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUZANNE FILLORAMO </br>     Plaintiff | ) </br> ) </br> ) | CIVIL ACTION |
| v. | ) </br> ) </br> ) | JURY TRIAL CLAIMED |
| PORTFOLIO RECOVERY ASSOCIATES, LLC </br>     Defendant | ) </br> ) </br> ) | </br> FEBRUARY 29, 2012 |

## COMPLAINT

1. This is a suit brought by a consumer for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* and includes pendent State claims for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110g *et seq.*, the Connecticut Creditor Collection Practices Act ("CCPA"), Conn. Gen. Stat § 36a-645 *et seq.,* and for intentional infliction of emotional distress.

2. Plaintiff, Suzanne Filloramo, is a natural person residing in East Hartford, Connecticut and is a "consumer" within the meaning of 15 U.S.C. 1692a(3) and a "consumer debtor" within the meaning of Conn. Gen. Stat § 36a-645(1).

3. Defendant, Portfolio Recovery Associates, LLC ("Portfolio"), is a Virginia company that purchases accounts receivable and debts from creditors and is a "creditor" as defined by 15 U.S.C 1692a and Conn. Gen. Stat § 36a-645(2).

4. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331 and 1337; supplemental jurisdiction is proper pursuant to 28 U.S.C § 1367.

5. This Court has jurisdiction over Portfolio because it engages in business activities within Connecticut.

6. Venue in this Court is proper, as the Plaintiff is a resident of Connecticut and the acts complained of occurred in this state.

7. On or around April 2011, Patricia Ribordy ("Patricia"), a Portfolio representative, contacted Plaintiff's cell phone through the use of an automatic dialing system and/or prerecorded voice.

8. Patricia told Plaintiff that Portfolio had acquired ownership of Plaintiff's account with Hannoush Jewelers and attempted to collect on the account.

9. Patricia told Plaintiff that the balance on the account was $3,373.83.

10. Unbeknownst to Plaintiff, the account that Portfolio had acquired from Hannoush had been fraudulently opened by a third party in her name.

11. At the time of this call, Plaintiff had an open account with Hannoush, which account had a number ending in 8614 (the "8614 account"), and Plaintiff believed that Patricia was calling in reference to the 8614 account.

12. Plaintiff explained to Patricia that she could not pay the entire balance and offered to make a payment of $300. Plaintiff also authorized a monthly, automatic debit in the amount of $267.39 to be withdrawn on the 15th of each month, beginning in May 2011.

13. Portfolio debited Plaintiff's account for the $300.

14. On or around May 10, 2011, Plaintiff received a call from Hannoush requesting payment on the 8614 account.

15. Plaintiff explained to the representative that she had paid $300 in April 2011 and had enrolled in automatic monthly payments.

16. The Hannoush representative informed Plaintiff that Hannoush had not received any payments for the 8614 account. She then looked into the company computer system and told Plaintiff that the company records showed that she had four accounts with Hannoush.

17. Subsequently, on or around May 10, Plaintiff called Portfolio and spoke with a representative who transferred her call to another representative who identified herself as Kim.

18. Plaintiff told Kim that the account that she had paid on was not legitimately owed by her and that she had mistakenly believed that Portfolio had been collecting on the 8614 account.

19. Kim provided Plaintiff with the account number of the account Portfolio had been referencing. That account number ended in 1818 (the "1818 account").

20. Plaintiff requested that Portfolio provide her with verification of the debt and a description of the items that were purchased with the account.

21. Plaintiff also requested that the automatic monthly payment plan be cancelled. Kim informed Plaintiff that she thought there should be enough time to cancel the May 2011 payment, but she told her that she would have to call back each month to cancel the payment.

22. Plaintiff also requested return of the $300 payment, but the funds were never returned to her.

23. On or around May 31, 2011, a representative of Portfolio called Plaintiff's father from the number 866-691-3568 through the use of an automatic dialing system and/or prerecorded voice.  The representative identified himself as Mr. Duke.

24. Mr. Duke told Plaintiff's father that Plaintiff had taken out a personal loan from him for $3,500 and that she had only paid $300 back.

25. Prior to the call from Mr. Duke, Plaintiff's father was not aware of Plaintiff's situation with respect to the Hannoush account.

26. Portfolio's conduct as described above caused Plaintiff severe emotional distress.

27. On or around June 28, 2011, Plaintiff spoke with a Portfolio representative by telephone.  During that call, Plaintiff told Portfolio that the number that it had been calling was Plaintiff's cell phone number, and requested that Portfolio cease contacting her cell phone number.

28. Notwithstanding her request, a Portfolio representative who identified himself as "Mr. Rowland" contacted Plaintiff's cell phone through the use of an automatic dialing system and/or prerecorded voice on July 20, 2011 and July 21, 2011.

29. On July 26, 2011, Plaintiff sent a letter via certified mail, return receipt requested to Portfolio requesting that it stop contacting her cell phone.

30. Notwithstanding Plaintiff's written request, Portfolio placed one or more additional calls to Plaintiff's cell phone through the use of an automatic dialing system

and/or prerecorded voice, including one call on or around July 28, 2011 in which Mr. Rowland left a message on Plaintiff's voicemail.

31. As a result of the aforementioned conduct of Portfolio, Plaintiff has suffered an ascertainable loss, including, but not limited to, the $300 payment she made to the 1818 account.

32. Portfolio knew, or reasonably should have known, that the above-described conduct would likely cause emotional distress to Plaintiff.

33. Portfolio's conduct did cause Plaintiff to suffer emotional distress, embarrassment, shame, stress and anxiety.

34. Portfolio's actions were willful, wanton and malicious, in that they intended to cause Plaintiff distress to induce Plaintiff to pay the debt, in hopes that Plaintiff would pay in order to relieve the stress.

35. Portfolio has violated the FDCPA, CCPA, TCPA, and CUTPA and is liable for intentional infliction of emotional distress.

WHEREFORE, Plaintiff prays for the following relief:

Monetary damages related to Plaintiff's emotional distress; Actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k, actual damages, punitive damages, and attorney's fees pursuant to Conn. Gen. Stat. § 42-110g, Actual damages, statutory damages, and attorney's fees and costs pursuant to Public Act No. 07-176, statutory damages pursuant to 47 U.S.C. § 227(b)(3) and such other relief as this Court deems appropriate.

PLAINTIFF, SUZANNE FILLORAMO

By: __/s/ Daniel S. Blinn_____
Daniel S. Blinn, ct02188
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408; Fax. (860) 571-7457